ENGELHART WANDELL, APPELLANT, *v.* AUSTIN CORBIN, AS RECEIVER OF THE LONG ISLAND RAILROAD COMPANY, RESPONDENT.

*Negligence — when it is negligent to run a train rapidly over a track lying between an apparent station and an excursion train — when it is not negligent for a passenger to leave a train, at a switch station resembling a passenger station.*

MOTION for a new trial, on exceptions ordered to be heard in the first instance at the General Term, after a nonsuit ordered at the circuit.

The court at General Term said : " This case carries before the court plaintiff's motion for a new trial, which is deemed to have been made when the judge at circuit directed the entry of an order that the exceptions should be heard in the first instance at the General Term. (Code of Civil Pro., § 1000.) The defendant moved to dismiss the complaint on the ground that no negligence was shown on its part, and that the plaintiff was clearly guilty of contributory negligence. The main question, therefore, is whether or not the evidence justified this disposition of the cause at circuit. I think that both questions should have been submitted to the jury.

" The plaintiff was injured by one of defendant's locomotives at a place called Rockaway Junction on the line of defendant's railroad.

" The plaintiff's evidence *tended* to show the following facts : That plaintiff, a member of a regiment, boarded a *special train* at Long Island city, with his company bound for Creedmoor. The train stopped at Rockaway Junction and there remained fifteen or twenty minutes to permit a westward bound train to pass on its way to Long Island city. *No caution was given, nor was there any announcement of the object for the stop.* The morning was hot and sultry and plaintiff became ill from thirst and the excessive heat of the day. He sought for water on the train and found that none had been provided for the passengers. Looking out from his car he could see a long platform which appeared like a passenger platform. He asked one of his comrades to get him a drink of water, and an effort was made to that end, but the comrade returned from the platform and a switch house which was connected therewith

and told him that, while there was water in that house, there was no cup, and he would have to go to the place to quench his thirst. He thereupon left the waiting train, crossed *an intervening track* and entered the switch house by a door opening through a side of the building which ran at right angles to the track *and faced westward.* The door was only eight or ten feet from the track. While in the house and before he had time to drink he heard the bell of his train begin to ring. It seems to be conceded that this was the signal for the waiting train to start on its way eastward. Plaintiff immediately left the water and hurried *westward* through the door, turned to his left and attempted to cross the track and board his train. Of course his back, at first, was eastward, so that he could not then see the approaching train even if there had been an unobstructed view. When he turned on his way toward the track his view for a few feet was obstructed by the building, and he could not *then* see the coming train. Indeed, he could have seen it only while passing over a space of four or five feet after he crossed the prolongation of the southerly line of the switch house, and *then* he was hurrying, running, and there was but little opportunity to look or see and scarcely time for reflection, even if he had thought of it. As he approached the track he was struck by the locomotive of the westward bound train, which was running at the rate of thirty-five to forty miles per hour.

" The first question naturally suggested is this : Was it prudent and safe management for the railway agents, who knew that the westward bound train was expected *to pass without stopping, at a rapid rate of speed,* to place and leave the special train upon the southerly track while the other train was passing, *without giving the passengers some warning,* that a train was expected to pass over the track which intervened between the special train and the platform, and without caution against the danger of leaving the train and crossing that track.

" I cannnot resist the conviction that *under the circumstances disclosed,* the omission to give the warning was a fact from which the jury might infer negligence on the part of the railway managers. There was a party of soldiers, not in an ordinary passenger car, but in an open car, from the sides of which twenty of them might leap at once, prompted by motives of necessity, pleasure or comfort,

especially on a hot day like this July morning.   It may be assumed that these passengers were like all other people when on an outing on such a day, naturally inclined to leave their crowded seats when the train was standing and seek relief upon the ground.   There was that which had the appearance of a passenger platform, with the natural suggestion or inference that a passenger depot was near at hand, although there was none in fact.   There was a hotel just beyond the switch-house.   It seems to me that the act of running a train over an intervening track thus situated *without warning* was a dangerous thing to do; that to attempt to run the train over such a place *at a rapid rate* was an aggravation of the danger; that to attempt to even pass a train over such a place *without stopping*, *whistling* or some such signal from the coming train, was clearly an act proper for the jury to consider and pass upon, and that the act of ringing the bell upon the waiting train, and thus summoning the passengers to resume their places when the westward train was coming over that track at that rate of speed was clearly another act from which negligence might have been inferred by the jury. Indeed a jury would be quite justified in saying that there was negligence in *placing* and leaving the eastward train upon the southerly track at all under the circumstances disclosed.   The switch by which the approaching train was let upon the intervening track was only about 300 feet from this switch-house and was not noticeable.   The westward train was only about eight seconds in passing from this switch across the point where plaintiff was injured and the space for observation was very narrow.   The coming train was on a straight line with the track on which the waiting train was standing and simply veered off at the switch.

" Taking all these circumstances into account along with others which were disclosed by the evidence, I think it is clear that the question of defendant's negligence should have been submitted to the jury.   It also seems to me that it was for the jury to determine whether or not plaintiff was guilty of neglect.   We must take men as we find them with their ordinary experiences in reference to the danger of leaving trains at stations, sometimes to send telegrams, get lunches, speak to friends or answer necessary calls, especially when conveniences are not provided in the cars.   Have such acts generally been attended with danger?   Was it not for the jury to

apply their common sense and judgment to such a question? True, this was not a regular station, but what of that? Did it look like one? Was the plaintiff misled by the sign "Rockaway Junction" and the platform appearances which defendant had erected or suffered to remain? It would have been proper for the jury to take all these considerations into account in determining whether or not this sick and suffering passenger, who failed to find ordinary traveling conveniences on board his car, was guilty of negligence in leaving his train for the purpose named. I certainly will not hold, *as matter of law,* that he was even imprudent, much less negligent."

An order should be entered sustaining the exceptions and directing a new trial, with the costs of this appeal to the plaintiff to abide the event.

*George W. Roderick,* for the appellant.

*Hinsdale & Sprague,* for the respondent.

Opinion by PRATT, J.

Present — BARNARD, P. J., DYKMAN and PRATT, JJ.

Exceptions sustained and new trial granted, costs to abide event.